CONTRA COSTA WATER CO. (HAWES v.). See Case No. 6,235.

CONTRACTS FOR UNION WHARF v. The J. H. STARIN. See Case No. 7,320.

---

## Case No. 3,143.

**CONVER v. PHOENIX MUT. LIFE INS. CO.**

[3 Dill. 224, note;[1] 6 Chi. Leg. News, 144.]

Circuit Court, D. Minnesota. Jan., 1874.

ACTION ON A LIFE INSURANCE POLICY — APPLICATION FOR POLICY — FALSE REPRESENTATIONS IN OBTAINING — AS TO HEALTH AND DISEASES — EFFECT OF — BURDEN OF PROOF — WHEN REPRESENTATIONS ARE NOT MATERIAL OR INTENTIONALLY UNTRUE — SUPPRESSION OF FACTS.

[1. Declarations by an applicant for life insurance, in response to questions as to his health, are representations, and the burden of proving their falsity is on the insurer.]

[2. A statement by the applicant that he is in good health means that he is free from any apparent sensible disease or the symptoms thereof, and that he is unconscious of any derangement of functions by which health could be tested.]

[Cited in Goucher v. Northwestern T. M. Ass'n, 20 Fed. 598.]

[3. Failure of the applicant to make known slight temporary disturbances, unless presenting characteristics of a dangerous disease, will not avoid the policy; but information of frequent and repeated physical disturbances should be given to the insurer at the time of application, and the suppression of such information is a withholding of facts material to the risk.]

[At law. Action by W. W. Conver, administrator of John Hope, deceased, against the Phoenix Mutual Life Insurance Company on a policy of life insurance.]

There was evidence given to show that Hope, whose life was insured, was stricken down on the night of December 27, 1871, and remained in an apparently unconscious state for some time. Physicians were called to attend him. He recovered, and was up and about his business the next day. Evidence also disclosed the fact that two or three of these attacks, less severe, occurred some weeks previous; and that after the insurance was effected, attacks of a nervous character were more frequent, when the deceased would call for some one to hold his wrists, and would lie down upon his back, partially unconscious. These attacks were about five minutes each in duration. Hope, on January 2, 1872, made application for life insurance, and a policy for the sum of $5,000 was issued. He did not disclose these attacks to the defendant, but made answers to the questions propounded to him, as stated in the charge of the court to the jury. There was also evidence to show that these attacks were vertigo, slight dizziness or fainting fits of a nervous character and not severe. Hope died May 29, 1872, of "chronic cerebritis." It appeared also that, in the opinion of one of the physicians who attended him December 27, 1871, this attack was owing to some disease of the brain.

Gordon E. Cole and Harvey Officer, for plaintiff.

Bigelow, Flandrau & Clark, for defendant.

NELSON, District Judge (charging jury). Contracts of life insurance are made upon the application of the party whose life is insured, or upon the application of the assured named in the policy. The application is usually accompanied by answers to certain interrogatories propounded in writing by the company, and when not actually or constructively embodied in the policy of insurance, but in a collateral paper, are called representations. These representations are in this case, by the agreement of the parties, made a part of the contract, and it is stipulated in the contract that "if any of the declarations or statements made in the application for

---

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

this policy, upon the faith of which this policy is issued, shall be found in any respect untrue * * * this policy shall be null and void." When the assured consented that the contract should be based upon the truth of the statements or answers made to the questions in the application, there can no question arise for the consideration of the jury as to their materiality. The company may show that they are simply untrue, and if that is done the right of plaintiff to recover is defeated.

The defense in this case is directed to proof that the answers to the following questions in the application were false and untrue: 8th. "What is the present state of the party's health?" Answer. "Good." 14th. "Has the party ever had any of the following diseases: Apoplexy, paralysis, fits, etc.?" Answer. "Scarlet fever when a lad; no other so far as I know." 19th. "Has the party had during the last seven years any severe sickness or disease; if so, state the particulars, and the name of the attending physician or who was consulted and prescribed?" Answer. "No." 20th. "Is the party now afflicted with any disease or disorder of any kind, and if so, what?" Answer. "No."

Mutual good faith is required in contracts of insurance, and in life insurance particularly it is requisite that a frank and truthful statement should be made by the applicant. The company must rely upon the information obtained from him, and the correctness of the information given is the basis of the contract. I agree with those authorities which hold that these declarations are representations; but when they are made a part of the contract, and the untruth of any of them is set up as a defense, the burden of proving it is upon the company; and if the answers are shown to be simply untrue, the plaintiff cannot recover The 14th question obtained an answer, that the applicant was in "good health." This I think means that in the ordinary sense of the term, the applicant was free from any "apparent, sensible disease, or the symptoms of them, and that he was unconscious of any derangement of the functions by which health could be tested;" in fact, that he was in a good state of health.

Should you believe from the testimony that the applicant, at the time he made this statement, was not in good health, as above stated, or if Hope knew of any symptom of disease which he did not disclose, then the plaintiff can not recover. By the 14th question, the attention of the assured was called to certain diseases therein mentioned, and was asked if he had any of those diseases. He answered, "Scarlet fever when a lad, and none other that I know of." The 19th question was put to him: "Have you had any severe sickness during the last seven years? If so, give the particulars, name of attending physician, and who was consulted, and what was prescribed." The answer was, "No." To the 20th question the answer was also, "No."

It is urged that these answers were untrue; for the assured concealed the fact that only seven days previous he had been prostrated, and remained for some time in an unconscious state, and the attack was so severe that two physicians were called by his friends to attend him, and also that similar attacks, less severe, had been frequent. Now it is for you to determine from the testimony whether the attacks about which the physicians have enlightened you was a disease specifically mentioned in the 14th question, or such a sickness as is contemplated by the 19th question, and in reference to which the company is entitled to know all the particulars, the names of the attending physicians, and any information which would afford it an opportunity of accepting or rejecting the application. It is not for you to decide whether the statements made to these questions in the application were material or not to the risk. The company, in making these inquiries, implies that it considered the representations material, and it will be relieved from the contract if the answers are untrue. The assured agreed that the representations should form part of the contract, and if untrue in any respect the policy should be void, and he must be bound by it. Whether they were intentionally untrue is also immaterial, if, in fact, they were untrue; for the contract of the parties is based upon the correctness of the answers, and to avoid the policy it is not essential that the applicant knew they were untrue. So far as the specific questions are concerned, the company was entitled to true and correct answers to them, and if untrue the policy is void; but in regard to information upon matters to which the attention of the applicant was not specifically called, the suppression must be of such facts as might render the insurance of the applicant's life unusually hazardous. It is for you to say, therefore, whether the condition of the applicant's health is shown by the evidence to have been such as indicated disease of some kind. A mere slight temporary disturbance, unless presenting characteristics of a dangerous disease, would not ordinarily avoid the policy; but information of repeated and frequent physical disturbances should be given to the company at the time of the application—good faith requires this—and the suppression of the information would be withholding facts material to the risk, and would avoid the policy. You are to say whether there has been such suppression on the part of the applicant in this case. You are to determine also, from the whole evidence, whether the defendant has established the untruth of the statements; and in considering this question you will, I know, freely and impartially decide the issue without any prejudice. The defendant, although an insurance corporation, is entitled to the same rights as a natural person—no less, and no more.

The jury rendered a verdict for the plaintiff.